## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA MACKIE, | ) | |
| BRITTANY FULLARD, | ) | |
| KAITLYN WIECZOREK, | ) | |
| ALLYSSA GRIFFIE, and | ) | |
| LIBBY EBER | ) | |
| | ) | |
| Plaintiffs, | ) | Ca. No. |
| | ) | |
| v. | ) | Jury Trial Demanded |
| | ) | |
| SCOTT MEDICAL HEALTH CENTER, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

1. Plaintiffs Donna Mackie, Brittany Fullard, Kaitlyn Wieczorek, Allyssa Griffie and Libby Eber bring this action for money damages pursuant to Title VII of the Civil Rights Act of 1964, as amended. Plaintiff Griffie also brings an action under the Americans with Disabilities Act.

2. Plaintiffs allege that Defendants subjected Plaintiffs to sexual harassment and unwanted touching so frequently and severely that it created a hostile and offensive work environment and resulted in adverse employment decisions being taken against them.

3. Plaintiff Griffie also alleges that Defendants harassed her about her disability so frequently and severely that it created a hostile and offensive work environment and resulted in an adverse employment decision being taken against her.

## JURISDICTION

4. This Court has original jurisdiction pursuant to 28 U.S.C. §§1331, 42 U.S.C § 2005e-5 and 42 U.S.C §12112.  This Court has supplemental jurisdiction over Plaintiffs' causes of action arising under Pennsylvania state law pursuant to 28 U.S.C. § 1367.

5. Venue lies in United States District Court for the Western District of Pennsylvania because the events or omissions giving rise to Plaintiffs' claims occurred in Western District of Pennsylvania.  28 U.S.C. § 1391(b)(2).

## ADMINISTRATIVE PROCEEDINGS

6. Plaintiffs Mackie, Fullard, Wieczorek and Griffie filed Charges of Discrimination with the Equal Employment Opportunity Commission (EEOC) on August 26, 2013. These Charges were crossfiled with the Pennsylvania Human Relations Commission (PHRC).

7. Plaintiff Eber filed a Charge of Discrimination with the EEOC on May 30, 2014.  This Charge was cross-filed with the PHRC.

8. On July 22, 2015, the EEOC found reasonable cause to believe that Scott Medical Health Center, P.C. violated Title VII by subjecting Plaintiffs and a class of other aggrieved employees to harassment because of sex, and to discharge or constructive discharge because of sex and protected activity under Section 704(a).

9. The Plaintiffs received their right to sue in federal court on October 20, 2015.

## PARTIES

10. Plaintiff Donna Mackie is an adult individual residing in the Western District of Pennsylvania.

11. Plaintiff Brittany Fullard is an adult individual residing in the Western District of Pennsylvania.

12. Plaintiff Kaitlyn Wieczorek is an adult individual residing in the Western District of Pennsylvania.

13. Plaintiff Allyssa Griffie is an adult individual residing in the Western District of Pennsylvania.

14. Plaintiff Libby Eber is an adult individual residing in the Western District of Pennsylvania.

15. Defendant Scott Medical Health Center, P.C. is a Pennsylvania registered corporation with its principal place of business located in the Western District of Pennsylvania.

16. At all times relevant hereto, Defendant Scott Medical Health Center, P.C. acted through its agents and employees, and is vicariously liable for all conduct, acts, commissions, and/or omissions occurring during the course and scope of said agents' and employees' agency or employment with the Defendant corporation.

**FACTS**

17. Plaintiffs Mackie, Fullard, Wieczorek, Griffie and Eber all worked as telephone appointment setters for Defendant Scott Medical Health Center, P.C. ("Scott Medical").

18. Mackie, Wieczorek and Griffie started working at Scott Medical on May 6, 2013. Fullard began on June 17, 2013. Eber worked at Scott Medical twice. This Complaint covers her second term of employment, which began in November 2012.

19. Plaintiffs' direct supervisor was Call Center Manager Robert McClendon.

20. At all times relevant to this Complaint, Robert McClendon was acting in and during the course of his duties and functions as Call Center Manager for Scott Medical Health Center, P.C., and was acting as an agent and employee of Scott Medical Center, P.C.

21. McClendon subjected Plaintiffs to sexual harassment and unwanted touching so frequently and severely that it created a hostile and offensive work environment and resulted in adverse employment decisions being taken against them.

22. McClendon also harassed Plaintiff Griffie about her disability so frequently and severely that it created a hostile and offensive work environment and resulted in an adverse employment decision being taken against her.

### Plaintiff Mackie

23. Plaintiff Mackie began working at Scott Medical Center on May 6, 2013. About three days later McClendon offered her a promotion because "she looked like she could handle *any* job." McClendon then put his hands on Mackie's shoulders, brought his hands around and pulled the front of her shirt together. He told her that she needed to close the front of her shirt even though it was not revealing. As he did this his hands brushed her breasts.

24. On June 19, 2013 McClendon came up behind Mackie and started rubbing and massaging her back and shoulders.

25. On June 27, 2013 Mackie was going out the door of the office for her break. McClendon walked towards her and blocked the door so that his penis brushed against her side as she passed.

4

26. Later that day, McClendon asked Mackie to change a light bulb in the ceiling because Mackie was taller.  He gave Mackie a chair to stand on.  As Mackie was standing on the chair about to screw in the new bulb, McClendon put his hand on her thigh.  Mackie was so shocked that she dropped and broke the bulb, got down off the chair and went back to her seat.  Plaintiffs Wieczorek, Fullard and Eber witnessed this incident.

27. On July 8, 2013 McClendon came up behind Mackie and started massaging her shoulders and telling her to relax.  McClendon then palmed Mackie's buttock and said that Mackie was sexy, well-proportioned and had a nice butt.  Mackie pulled away from him.  Plaintiffs Wieczorek and Fullard witnessed this incident.

28. On July 15, 2013 the electricity went out at Scott Medical.  During the two hours that the power was out, McClendon walked around the office shining a flashlight at the private parts of his female employees.  McClendon repeatedly shone his flashlight on Mackie's breasts and crotch area.

29. McClendon would alternately offer to promote or threaten to fire Mackie and the other Plaintiffs to get them to comply with his harassment.

30. By the end of the work day, McClendon's constant harassment left Mackie suffering from extreme stress and headaches.  It also caused tension and arguments with her spouse.

31. Eventually the hostile and offensive work environment became unbearable for Mackie and she resigned on July 26, 2013.

**Plaintiff Fullard**

32. McClendon constantly commented on Plaintiff Fullard's body and attire.  He told her she was "well-proportioned" and had a "nice figure".

33. On June 27, 2013 McClendon came up behind Fullard, said that she looked tense and started to massage her shoulders.  As he was giving her a massage, he pressed his penis against Fullard's back.  Fullard told him that she did not like what he was doing.  McClendon replied that it was his building and that she could get out if she did not like it.  Plaintiff Wieczorek witnessed this incident.

34. On July 9, 2013 at the morning employee meeting McClendon announced that he was Muslim and that it was Ramadan, so he had to fast and could not even have sex with his wife.  Fullard told McClendon that it made her uncomfortable for him to talk about his sex life.  McClendon replied that he could say whatever he wanted to.  Plaintiffs Mackie and Weiczorek were also at the meeting and were made uncomfortable by his statement.

35. On July 11, 2013 McClendon pulled Fullard into his office and attempted to make conversation with her about how she was feeling and how things were going at home.  All the while McClendon was winking at Fullard and groping his penis.

36. On July 15, 2013 the electricity went out at Scott Medical.  During the two hours that the power was out, McClendon walked around the office shining a flashlight at the private parts of his female employees.  McClendon repeatedly shone his flashlight on Fullard's breasts and crotch area.

37. The last time she got paid, McClendon told Fullard that she had to pick up her check at another location an hour away even though he knew that Fullard did not have

transportation.  McClendon kept pressuring Fullard to let him give her a ride in his car to pick up her check.  Fullard did not want to get in McClendon's car because of his harassment and also because McClendon often told everyone he kept a gun in his car.

38. As a result of this harassment Fullard began to suffer dizzy spells and have trouble concentrating and functioning.  It also caused tension and arguments between Fullard and her fiancée.

39. Eventually the hostile and offensive work environment became unbearable for Fullard and she resigned on July 19, 2013.

## Plaintiff Wieczorek

40. McClendon constantly commented on the bodies of Plaintiffs Wieczorek, Mackie and Fullard.  He said that they were "well-proportioned" and had "nice figures".  He also told Wieczorek that she had a nice chest.

41. On May 14, 2013 McClendon called Plaintiffs Wieczorek and Griffie into his office and asked them if they shared men or had three way sex.

42. One day McClendon asked Wieczorek to follow him so that he could show her the PR office.  He opened the door to the PR office and said, "This is where you are going to give me a lap dance."  Wieczorek shook her head no and left.  Plaintiff Mackie witnessed this incident.

43. Later that day McClendon asked Plaintiffs Wieczorek, Griffie, Mackie and a co-worker named Chuck to go to the physical therapy room.  Once there he told Wieczorek to bounce on an exercise ball.  McClendon said, "This is where men watch

you bounce." Wieczorek got up off the ball and left. Wieczorek felt repulsed and disgusted by these incidents and cried for days.

44. On June 13, 2013 McClendon called Wieczorek into his office. He told her that he had a gun in his car and that he could personally take care of any problems she might have.

45. On June 15, 2013 McClendon told Wieczorek that he could not look at her because she reminded him of the "white devil", McClendon's name for his wife.

46. Sometime between June 18, 2013 and June 21, 2013 McClendon called Wieczorek into his office and wanted to give her his personal telephone number. He asked Wieczorek to call him at night when she got home because he cared about her and was worried about her.

47. On June 19, 2013 McClendon rubbed Wieczorek's shoulders. Wieczorek told him to stop because it made her uncomfortable.

48. On July 1, 2013 when Wieczorek came back from her break, her pillow was missing. McClendon told her that he had taken it. A few minutes later McClendon called Wieczorek into his office and asked her why she needed the pillow. She said that she was having cramps with her period and that the pillow provided comfort. McClendon then rubbed up against her, putting his hands on her right hip and stomach area. Wieczorek grabbed her pillow and left.

49. On July 15, 2013 the electricity went out at Scott Medical. During the two hours that the power was out, McClendon walked around the office shining a flashlight at the private parts of his female employees. McClendon repeatedly shone his flashlight on Wieczorek's breasts and crotch area.

50. As a result of the sexual harassment Wieczorek began experiencing anxiety, nausea and chronic headaches.

51. McClendon terminated Wieczorek on July 16, 2013.  A week or two before firing her, McClendon had asked Wieczorek what she was doing over the weekend.  Wieczorek said that she was going out with her sister.  McClendon handed her $20 for going out and told Wieczorek to ask him for whatever she needed in the future.  Wieczorek felt that McClendon expected something sexual in return for the money, and that she was terminated because she did not give him what he wanted.

**Plaintiff Griffie**

52. McClendon's sexual harassment of Griffie mainly focused on her weight and his stereotypical views of femininity.  He called her "fat" and referred to her in the office as the "fat lady."  Everyone in the office, including Plaintiffs, heard McClendon call Griffie "fat" and refer to her as the "fat lady."

53. McClendon gave Griffie a brochure from a weight loss program offered by SMHC.  He told Griffie that she had to join or she could not work there anymore.  The program cost $99 per month.  McClendon told Griffie that he signed her paychecks so he knew that she could afford the program and that her weight was affecting him. Griffie said that she did not like it when he spoke to her that way.  McClendon responded that he did not like seeing her walk in his call center, seeing her sitting in his call room, or signing her paycheck because of her weight.

54. McClendon told Plaintiff Mackie that she should not give rides to Griffie anymore because Griffie "needed to up walk up the hill."

55. McClendon commented on Griffie's appearance every day and told her how to dress. He complimented her if she dressed the way he wanted her to and criticized her if she did not.

56. Every day McClendon led a morning employee meeting. McClendon used the meetings to comment on the clothing and physical appearance of Griffie and other female employees. He would identify certain female employees as "well-proportioned" and others, such as Griffie, as "fat." He only complimented thin women and women who wore short skirts or low cut tops. All Plaintiffs heard McClendon make these comments at morning employee meetings.

57. At many of these meetings, at which Griffie was present, McClendon told all of his employees that he hated fat people and wanted to shoot fat people. He also said that he had a gun in his car, had killed many people when he was a Marine and did not hire hit men if he needed someone killed. All Plaintiffs heard McClendon made these statements.

58. On May 14, 2013 McClendon called Plaintiffs Griffie and Wieczorek into his office and asked them if they shared men or had three way sex. On or about May 6, 2013 McClendon had given Griffie $20 for bus fare. When she did not react well to this inquiry about her and Wieczorek's sex life he began to ask for the money back.

59. McClendon also subjected Griffie to unwanted and offensive touching. On a daily basis, McClendon scolded Griffie about her posture and told her that she could not continue to work there if her posture did not improve. Under the pretense of correcting her posture, McClendon would regularly touch Griffie on her shoulders, back and near her breasts. Griffie would tell him to stop or shrug him off because

the touching made her uncomfortable.  In response, Griffie would yell at her, call her a "mother-fucker" and say that he could do what he wanted.

60. One day Griffie was suffering from allergies.  McClendon called her into his office and told her that he was going to rub Tiger Balm on her to help with her allergies. Griffie did not want to let him touch her, but he told her that she had to let him apply the Tiger Balm or she had to go home.  McClendon then rubbed Tiger Balm with his hand onto Griffie's head and chest. The other Plaintiffs witnessed this incident.

61. Shortly after being hired, Griffie confided in McClendon that she suffered from recurrent clinical depression that, at times, could make it difficult for her to work. Instead of working to find a reasonable accommodation for Griffie's disability, McClendon used her disability to harass and humiliate her, and eventually to terminate her.

62. McClendon told Griffie that he considered her depression to be a personal weakness, not an illness.  McClendon began regularly telling Griffie that she was weak and that he could not work with weak people.  A few weeks before her termination, McClendon began to regularly call Griffie into his office and berate her with loud and abusive language focusing on her "weakness."  Each time he would threaten to fire Griffie for her "weakness." Griffie would sit there and cry.

63. On June 26, 2013 McClendon fired Griffie because she was "weak and fat."  All Plaintiffs heard McClendon say that he fired Griffie because she was "weak and fat" and because he only wanted tight and fit women working for him.  Plaintiffs Mackie, Wieczorek, Fullard and Eber all heard McClendon continue to refer to Griffie as "the fat lady" after her termination.

**Plaintiff Eber**

64. McClendon frequently massaged Plaintiff Eber's back, neck and shoulders.   This touching was unwanted and made Eber uncomfortable.   McClendon also often looked down Eber's shirt at her breasts.

65. Appointment setters had to clock-in using McClendon's computer.   Normally he turned the computer to face away from him for employees to clock-in from the other side of his desk.   One day, Eber was late.   McClendon made Eber come around to his side of the desk where he was sitting to clock-in.   Eber had to go between McClendon, who was seated, and his desk to reach the computer.   Eber had to bend over to use the computer.   As Eber was clocking-in, McClendon stood up from his chair, rubbing his penis against Eber's buttocks.   McClendon said, "Look at that tight little ass."

66. On one occasion, Eber went to a hockey game with another employee named Chuck. The next day, McClendon called Eber into his office and asked if she was "fucking Chuck."   Eber said that she was not and that it was not appropriate to ask. McClendon insisted that Eber was having sex with Chuck and began repeatedly telling Eber, "You're fucking Chuck.   You're fucking Chuck."   McClendon made these comments so that other employees could hear them.

67. On a day when Eber wore a skirt to work, McClendon commented on how nice she looked and told her that she had to eat lunch with him.   McClendon brought Eber lunch, but Eber did not eat with him.   When she returned from lunch, McClendon said, "I didn't get to watch you eat your lunch."

68. McClendon told Eber that he was in love with her and told other employees that he loved Eber.

69. McClendon often commented on Eber's body.  He repeatedly referred to Eber's "tight little ass."

70. On June 28, 2013 McClendon screamed and cursed at Eber because it was raining outside and there was mud on her shoes.  McClendon made Eber get on her hands and knees and scrub the floor, all the while screaming profanities at her.  McClendon raised his hand as if he was going to smack Eber in the face.  Eber put her hand up to protect herself, and McClendon instead smacked her hand.

71. On July 2, 2013 McClendon again screamed insults and profanities at Eber.  Eber locked herself in the bathroom.  McClendon stood outside the bathroom door and continued to shout at Eber.  When Eber finally came out of the bathroom she could not work because she was crying.  McClendon told everyone in the call center that he treated Eber badly because she was disabled.  McClendon told everyone that he would do whatever he wanted to do and that he had a gun and would use it.

72. Once, McClendon was angry with Eber and made her leave work.  As she was walking away, McClendon followed her in his car.  He kept screaming and yelling at her, trying to get her to get into his car, but Eber refused.  Eventually he stopped his car in the road, blocking traffic.  He told her to get into his car or he would suspend her for one week.  Feeling she had no choice, Eber got into the back seat of McClendon's car.  She was afraid and began to cry.  McClendon continued to scream and yell at her.  He said, "What's it gonna take?  A bullet to your head."  This comment made Eber fear for her safety.

73. McClendon used intimidation and adverse employment actions to make Eber endure his harassment. McClendon's pattern was to find an employee's weak spot and use it against her. When Eber was not cooperative or complained about the harassment he would write her up on false charges and suspend her. McClendon would threaten to write her up on a weekly basis. McClendon knew that Eber was a single mom and could not afford to be suspended and without income. McClendon would tell her to sign the write-up or he would fire her. When Eber would question the veracity of the write-up, McClendon would say, "I can do whatever the fuck I want."

74. Eber went to McClendon's supervisor, Clinic Director Dr. Gary T. Heironimus, to complain about McClendon's sexual harassment, offensive touching and intimidation several times. McClendon would call up to Dr. Heironimous' office and tell Dr. Heironimus not to talk to Eber. On several occasions, Eber waited up an hour outside Dr. Heironimus' office, but the secretary would never let her in to see Dr. Heironimus. After Eber went to see Dr. Heironimus, McClendon began treating her even worse.

75. McClendon told Eber that if another job called looking for references, he would tell them that Eber didn't "know how to shut her fucking mouth. I can do whatever the fuck I want." Eber had also overheard McClendon give negative references to other employees who had applied for other jobs.

76. The first week of August 2013, McClendon had Eber transferred to Scott Medical's Wexford office and reduced her pay by $1 per hour. Eber was terminated the following week.

77. After she was terminated, McClendon began calling her repeatedly.  Eber did not answer.  Eventually, Eber had to have her phone number changed to prevent the calls.

## All Plaintiffs

78. In addition to being harassed themselves, Plaintiffs witnessed McClendon sexually harass and offensively touch all of his female employees on a daily basis.  This pervasive atmosphere of harassment contributed to the hostile and offense work environment.

79.  All of the Plaintiffs experienced and witnessed McClendon regularly sexually harass all of his female employees in the following ways:

    a.  By massaging the backs, necks and shoulders of female employees while rubbing his penis against their bodies;

    b.  By standing behind seated female employees and looking down their shirts.

    c.  By opening the door to the women's restroom every time a female employee exited and sniffing the air;

    d.  By telling female employees how to dress and only complimenting female employees who wore short skirts or low cut tops;

    e.  By publicly critiquing the bodies of his female employees and pointing out which ones were "well-proportioned" and which ones were "fat";

    f.  By calling overweight female employees "fat" and publicly stating that he could not work with fat people and wanted to shoot fat people;

g.  By publicly calling female employees "bitches" and "barn animals"; and

h.  By blocking doorways with his body so that female employees would have to brush against his penis to cross the threshold.

80. Specifically, on June 26, 2013 Plaintiffs Mackie, Wieczorek and Fullard saw McClendon come up behind a female co-worker named Dorine Emereck and massage her shoulders.  Emereck seemed uncomfortable.

81. On July 10, 2013 Plaintiffs Mackie, Wieczorek and Fullard saw McClendon massaging Dorine Emereck's shoulders.  During their break, Wieczorek asked Emereck if McClendon often massaged her.  Emereck said that he did.

82. On July 15, 2013 Plaintiffs Mackie, Wieczorek and Fullard witnessed McClendon call two new female employees named Danielle and Tracey into his office.  They saw McClendon give Danielle and Tracey back and shoulder massages.  At one point McClendon pulled down Tracey's outer top so that he could touch her skin.

83. All Plaintiffs also experienced and witnessed McClendon use fear, intimidation, abusive language, the offer and then withdrawal of promotions, and the threat of termination to make his female employees comply with his harassment.

84. In June 2013, Plaintiffs Griffie and Wieczorek went to apply for jobs at another call center.  McClendon's daughter happened to work at the other call center and called McClendon when she recognized Griffie and Wieczorek.  McClendon told his daughter not to hire them.  Upon their return, McClendon threatened to blackball Griffie from other jobs in telemarketing.

85. On July 17, 2013 Plaintiffs Mackie, Wieczorek and Fullard saw McClendon call a female employee named Tracey into his office.  When Tracey came out she was bawling.  Tracey told Complainants that McClendon had told her that she was weak and needed to toughen-up.   To prevent the women from talking about his harassment McClendon came out of his office and told everyone not ask "why" if they someone crying.

86. All Plaintiffs heard McClendon repeatedly say that he was willing to beat people up or kill people and that he kept a gun in his car.

87. On June 25, 2013 Plaintiffs Griffie, Mackie, Wieczorek and Fullard went to McClendon's supervisor, Clinic Director Dr. Gary T. Heironimus, to complain about McClendon's sexual harassment, offensive touching and intimidation.  As soon as Plaintiffs said that they were there to discuss McClendon's behavior, Dr. Heironimus cut them off and refused to listen to any of the details.  Dr. Heironimus told them, "You need to talk to Bob yourselves."  Complainant Mackie replied to Dr. Heironimus that he was McClendon's boss and needed to take care of the problem.   Dr. Heironimus refused to listen to the substance of their complaints.

88. Plaintiff Eber also tried to speak to Dr. Heironimus about McClendon's harassment, but was never allowed into his office.

89. By refusing to hear Plaintiff's complaints of sexual harassment, Scott Medical failed to provide Plaintiffs with preventative or corrective opportunities to avoid the harm caused by McClendon.

90. Scott Medical also failed to exercise reasonable care to prevent and promptly correct McClendon's sexually harassing behavior.

**Damages**

91. As a direct consequence of the Defendants actions and failures to act, Plaintiffs were subjected to severe emotional distress, anxiety, humiliation, embarrassment and fear, which manifested itself in mental and physical distress, injury and damage. Plaintiffs have also suffered significant lost wages and other economic losses.

**Causes of Action**

**Count I**
**All Plaintiffs v. Scott Medical Health Center, PC**
**Violation of Title VII**
**Harassment-Quid Pro Quo**

92. Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

93. Plaintiffs were subjected to sexual harassment by their supervisor, Robert McClendon, because of Plaintiffs' sex;

94. McClendon's conduct was not welcomed by Plaintiffs;

95. Plaintiffs' submission to McClendon's conduct was an express or implied condition for receiving a job benefit or avoiding a job detriment;

96. Plaintiffs were subjected to adverse tangible employment actions;

97. Plaintiffs' rejection of McClendon's conduct was a motivating factor in these adverse tangible employment actions.

98. Plaintiffs demand judgment in their favor against Defendants and an award of all remedies available to them under the law.  They seek compensatory and punitive damages, counsel fees, costs, equitable relief, and such other relief as is just and appropriate.

## Count II
## All Plaintiffs v. Scott Medical Health Center, P.C.
## Violation of Title VII
## Harassment-Hostile Work Environment

99. Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

100.     Plaintiffs were subjected to sexual harassment by their supervisor, Robert

McClendon.

101.     McClendon's conduct was not welcomed by Plaintiffs.

102.     McClendon's conduct was motivated by the fact that Plaintiffs are women.

103.     The conduct was so severe or pervasive that a reasonable person in

Plaintiffs' position would find Plaintiffs' work environment to be hostile or abusive..

104.     Plaintiffs believed their work environment to be hostile or abusive as a result

of McClendon's conduct.

105.     Plaintiffs suffered adverse tangible employment actions as a result of the

hostile work environment.

106.     Plaintiffs demand judgment in their favor against Defendants and an award

of all remedies available to them under the law.  They seeks compensatory and

punitive damages, counsel fees, costs, equitable relief, and such other relief as is just

and appropriate.

## Count III
## All Plaintiffs v. Scott Medical Health Center, P.C.
## Violation of Pennsylvania Human Relations Act

107.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

108.     By engaging in the creation and fostering of a sexually hostile work

environment, Defendants violated the provisions of Title 43 P.S. § 955 which

prohibits discrimination and harassment based upon sex.

109.     Plaintiffs demand judgment in their favor against Defendants and an award of all remedies available to them under the law.  They seek compensatory and punitive damages, counsel fees, costs, equitable relief, and such other relief as is just and appropriate.

## Count IV
### Griffie v. Scott Medical Health Center, PC
### Violation of the Americans with Disabilities Act
### Harassment-Hostile Work Environment

110.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

111.      Griffie has a disability within the meaning of the ADA;

112.     Griffie is a qualified individual within the meaning of the ADA;

113.     Griffie was subjected to harassment because of her disability by Robert McClendon.

114.     McClendon's conduct was not welcomed by Griffie.

115.     McClendon's conduct was motivated by the fact that Griffie has a disability, as defined by the ADA.

116.     The conduct was so severe or pervasive that a reasonable person in Griffie's position would find Griffie's work environment to be hostile or abusive.

117.     Griffie believed her work environment to be hostile or abusive as a result of McClendon's conduct.

118.     Griffie suffered an adverse tangible employment action as a result of the hostile work environment.

119.     Plaintiff Griffie demands judgment in her favor against Defendants and an award of all remedies available to her under the law.  She seeks compensatory and

punitive damages, counsel fees, costs and such other relief as is just and appropriate.

### Count V
### Plaintiff Griffie v. Scott Medical Health Center, P.C.
### Violation of Pennsylvania Human Relations Act

120.    Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

121.    Defendants harassed Plaintiff Griffie because of her disability in violation of Title 43 P.S. § 955 which prohibits discrimination and harassment based upon disability.

122.    Plaintiff Griffie demands judgment in her favor against Defendants and an award of all remedies available to her under the law.  She seeks compensatory and punitive damages, counsel fees, costs, equitable relief, and such other relief as is just and appropriate.

Respectfully submitted,

/s/Edward A. Olds
Edward A. Olds, Esquire
PA I.D. No. 23601
OLDS RUSS & ASSOCIATES
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
(412) 492-8975